# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JAMES R. ZUEGEL,<br>    Plaintiff,<br>v.<br>MOUNTAIN VIEW POLICE DEPARTMENT (MVPD), et al.,<br>    Defendants. | Case No. 17-cv-03249-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re: ECF 45] |

Plaintiff James Zuegel ("Plaintiff") brings this action alleging violations of 42 U.S.C. § 1983 and state law against Defendants Mountain View Police Department ("MVPD"), City of Mountain View (the "City"), and Mountain View Police Officers Patrick Ward, Britton Moore, and Marco Garcia (collectively, "Officer Defendants") (together with MVPD and the City, "Defendants"). *See* ECF 43 ("SAC"). Before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC"). ECF 45-1 ("Mot."). The Court held a hearing on Defendants' motion to dismiss on September 27, 2018. The Court allowed supplement briefing on one issue, which was completed on October 17, 2018. Based on the briefing, oral argument presented at the hearing, and the applicable law, the Court hereby DENIES IN PART AND GRANTS WITHOUT LEAVE TO AMEND IN PART Defendants' motion to dismiss.

## I. BACKGROUND

The Court previously discussed the factual and procedural background of this case in its order granting Defendants' motion to dismiss the First Amended Complaint ("Order"). *See* ECF 40. The Court first reviews its holdings in its previous Order and then recounts the relevant allegations in the SAC. By way of brief background, Plaintiff brings numerous § 1983 claims and one state law claim related to actions taken by MVPD officers surrounding the arrest of Plaintiff

for allegedly inappropriately touching a young girl at a YMCA. Plaintiff has vigorously maintained his innocence but previously pled no contest to a misdemeanor charge of disorderly conduct.

### A. Order Dismissing First Amended Complaint

In the First Amended Complaint ("FAC"), Plaintiff asserted six causes of action against: (1) the Officer Defendants for violations of 42 U.S.C. § 1983; (2) MVPD and the City for violations of § 1983 (Monell Claim); (3) all Defendants for violations of the Bane Act, California Civ. Code section 52.1(b); (4) all Defendants for false arrest and false imprisonment; (5) all Defendants for intentional infliction of emotional distress; and (6) all Defendants for reckless and grossly negligent infliction of emotional distress. *See generally* ECF 18 ("FAC").

In its Order dismissing these claims, the Court held that many of the FAC claims were barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that "Section 1983 [claims] are not cognizable when 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction.'" Order at 6 (quoting *Heck*, 512 U.S. at 481–82). The Court first held that *Heck* barred Plaintiff's claim for unlawful arrest without probable cause. *See id.* at 11. The Court then held that Plaintiff's § 1983 claims are barred by *Heck* to the extent they argue any of the following violations: "[arrest despite] lack of a warrant, the coercion to consent to a search of [Plaintiff's phone], the right to remain silent, the right to counsel, and the due process right not to be interrogated." *Id.* at 12 (footnote omitted). "[B]ecause Plaintiff could have challenged all of that conduct in motions to suppress during the criminal proceedings or can pursue it in habeas proceedings," *Heck* bars such claims. *Id.* Since amendment would have been futile, the Court dismissed these claims without leave to amend. *See id.* at 11–12.

The Court then held that *Heck* did not bar Plaintiff's § 1983 claims for a misdemeanor arrest at home at night and a warrantless arrest without consent to enter and absent exigent circumstances. *Id.* at 15. However, the Court found that the FAC did not plausibly allege either claim. As to the misdemeanor arrest, the FAC needed to allege "[m]ore facts regarding whether Plaintiff was arrested for a misdemeanor or felony." *Id.* at 14. As to the warrantless arrest, the

FAC did not "rais[e] a plausible inference that the police unlawfully entered the home" without consent or absent exigent circumstances. *Id.* So the Court granted leave to amend as to these claims, to allow Plaintiff to bolster his factual allegations. The Court also granted leave to amend as to municipal liability of MVPD and the City based on underlying claims not barred by *Heck*. *Id.* at 15.

Finally, as to Plaintiff's state law claims, the Court held that Plaintiff had failed to allege compliance with the California Tort Claims Act ("CTCA") and thus could not bring claims for money damages against the public entities. *See id.* at 16. The Court granted leave to amend to allege compliance with the CTCA.

### B. Allegations in the Second Amended Complaint

In his SAC, Plaintiff alleges that on May 23, 2015, he and his wife, Lisa, accompanied their son, JR, who has severe autism, to the Mountain View El Camino YMCA ("YMCA"). SAC ¶¶ 14, 20. At some point while there, Plaintiff alleges that he and JR were seated with JR's service dog on a couch near two young girls. *Id.* ¶¶ 20–21. While there, JR attempted to "dart" away, and Plaintiff grabbed him by the back of his t-shirt to bring him back to the couch, saying something to the effect of "sit your butt down." *Id.* ¶¶ 21–23.

A number of days later and unbeknownst to Plaintiff at the time, on June 5, 2015, the mother of one of the girls drove her daughter to the MVPD to report that a man with a service dog at the YMCA had bothered and "touched" her daughter. *Id.* ¶¶ 26–28. Defendant Officer Patrick Ward interviewed the daughter, who recalled that the man with the service dog slapped her on the butt and asked her "how old are these buns?" *Id.* ¶ 32. Plaintiff alleges that the police conducted a follow-up interview with the minor, who repeated that the man with the service dog "smacked her on the butt" but did not "touch any private areas." *Id.* ¶ 34. Plaintiff points out various issues with the mother's and daughter's statements to the MVPD, and completely denies that he smacked the girl on the butt or made the inappropriate comments attributed to him. *Id.* ¶¶ 32–35.

Based on the police interviews with the minor and her mother, on Sunday, June 7, 2018 at 9:30 p.m., Officers Ward and Britton Moore went to the Zuegel home without a warrant. *Id.* ¶ 36. When they approached the front door, Plaintiff stepped out. The officers "requested that

[Plaintiff] admit them to the house, but [Plaintiff] denied them entry." *Id.* ¶ 37. However, Plaintiff's wife, who did not hear Plaintiff deny the officers entry, came to the door and told the officers to come in. *Id.* The officers entered and immediately instructed Plaintiff and his wife to separate so they could be interviewed. When Plaintiff and his wife refused to be separated and interrogated in the absence of counsel, Plaintiff was handcuffed and arrested. *Id.* ¶ 38. The episode was extremely distressing to the family and caused JR to become highly agitated. *Id.* ¶ 39. Before they left the home with Plaintiff, the officers allegedly told his wife, "He won't be coming home tonight." *Id.* ¶ 40.

Plaintiff alleges that the officers purposefully arrested him late on a Sunday night for two reasons. First, the officers knew Plaintiff could not be bailed out until the following day, ensuring that he would undergo a strip- and cavity-search and spend the night in county jail. *See id.* ¶¶ 41–42. Second, arrest on a Sunday night would make it more difficult for Plaintiff to secure counsel, enabling the officers to interrogate Plaintiff without an attorney. In fact, Plaintiff alleges that his attorney was at the MVPD station and attempted to see Plaintiff, but the on-duty officers told the attorney that Plaintiff was being interrogated elsewhere. *Id.* ¶¶ 43–44. Plaintiff asked for counsel multiple times. *See, e.g.*, *id.* ¶ 63. According to Plaintiff, the officers were motivated to treat him poorly because of his status as an accused pedophile. *See id.* ¶ 42.

At the police station, Officer Marco Garcia led the interrogation of Plaintiff, employing certain "unsavory interrogation techniques," though Plaintiff denied all wrongdoing. *Id.* ¶ 45. Plaintiff claims that he was interrogated notwithstanding his request for an attorney, that the Officers lied about possessing an incriminating video of the YMCA lobby, and that they coerced him into consenting to a search of his cell phone. *Id.* Plaintiff was transferred from the Mountain View police station to the county jail in San Jose at 1:00 a.m. where he was confined overnight and for part of the following day until his wife posted bail on June 8, 2015. *Id.* ¶¶ 46–48.

The booking information sheet prepared by Officer Ward stated that Plaintiff's offense was violation of Cal. Penal Code § 288(a), felony lewd and lascivious act upon a child. *Id.* ¶ 49. Plaintiff alleges that the officers never believed he actually committed a felony, but instead characterized his actions as such in an attempt "to provide pretext and justification for warrantless

4

arrest of a person who committed no offense in the presence of peace officers." *Id.* The Santa Clara County District Attorney filed a two count Misdemeanor Complaint against Plaintiff on June 24, 2015, charging him with Misdemeanor Sexual Battery in violation of Penal Code section 242-243.4(3)(1), and Misdemeanor Soliciting or Engaging in Lewd Conduct in Public in violation of Penal Code section 647(a). *Id.* Though Plaintiff has vigorously maintained his innocence, he ultimately pled no contest to misdemeanor disorderly conduct and was placed on probation for three years, ordered to perform 75 hours of community service, and barred from coming within 300 yards of the YMCA. *Id.* ¶ 50–53. Plaintiff intends to pursue habeas corpus proceedings challenging the constitutionality of sex offender registration as applied to his case and to subsequently withdraw his guilty plea and obtain a complete acquittal at trial. *Id.* ¶ 54.

In his SAC, he asserts the following six causes of action against: (1) the Officer Defendants for warrantless arrest within the home without consent or exigent circumstances in violation of 42 U.S.C. § 1983; (2) the Officer Defendants for Sunday night arrest and the resulting strip- and cavity-search and overnight incarceration in violation of 42 U.S.C. § 1983; (3) the Officer Defendants for infringement of the constitutional right to counsel in violation of 42 U.S.C. § 1983; (4) the Officer Defendants for infringement of the constitutional right of marital and familial association in violation of 42 U.S.C. § 1983; (5) MVPD and the City for violations of § 1983 (*Monell* Claim); (6) all Defendants for violations of the California Bane Civil Rights Act, Cal. Civ. Code § 52.1(b), seeking injunctive relief only. *See generally* SAC.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

5

unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

Defendants' motion to dismiss challenges each of Plaintiff's claims except interference with marital and familial association. *See generally* Mot. The Court discusses each claim in turn.

### A. Warrantless Arrest

Defendants argue that Plaintiff's warrantless arrest claim must be dismissed because the allegations make clear that Plaintiff's wife consented to the officers' entry into the home.[1] *See* Mot. at 3. According to Defendants, though Plaintiff initially refused to allow the officers to enter, he subsequently failed to expressly deny consent when his wife granted the officers consent. Thus, his wife's consent overrode Plaintiff's previous denial.

The Court disagrees. The facts as alleged fall squarely under the Supreme Court's holding in *Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006): "[A] physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." In that case, both the defendant and the fellow occupant were at the door, and when the defendant denied entry, the officer turned to the fellow occupant who gave consent, so the officer entered. *See id.* at 107. The same is true here, reading the allegations in the light most favorable to Plaintiff. Plaintiff denied the officers entry. While they were still at the front door,

---

[1] Defendants also argue that Plaintiff fails to state a claim that his rights were violated because the Officer Defendants arrested him for a misdemeanor. *See* Mot. at 2–5. But Plaintiff's relevant claim is for "warrantless arrest within the home" and does not allege a violation specific to his arrest for a misdemeanor. In any event, consent is required for a warrantless arrest in the home regardless of whether Plaintiff was arrested for a misdemeanor or a felony. Because the Court finds that Plaintiff has adequately alleged that there was no consent, the Court need not reach the issue.

To the extent the Bane Act claim turns in part on this determination, the Court declines to decide the issue until Plaintiff can demonstrate he has standing to bring his Bane Act claim, as discussed below.

6

Plaintiff's wife consented to entry. In the face of an express denial and express consent, the denial trumps and the officers did not have consent to enter.

The Court is not convinced by Defendants' arguments to the contrary. Though *Randolph*'s rule might be narrow, it expressly contemplates the scenario here. The fact that the officers in *Randolph* sought only to search the home, not to arrest the plaintiff, is of no moment. The same rule applies to officer entries for searches and arrests. *See Bonivert v. City of Clarkston*, 883 F.3d 865, 874 (9th Cir. 2018) (applying *Randolph* to unlawful entry claim where defendant was arrested). Moreover, unlike in *Fernandez v. California*, 571 U.S. 292, 302–03 (2014), Plaintiff was physically present at the scene when his wife consented. And even if the Eleventh Circuit's decision in *United States v. Watkins*, 760 F.3d 1271 (11th Cir. 2014) were binding on this Court, it is easily distinguishable. In that case, despite the defendant's express *prior* refusal, when his wife consented to a search of property in a context that "made crystal clear that her consent was independent of his," he failed to expressly refuse consent. *See id.* at 1283. Here, in the light most favorable to Plaintiff, the SAC must be read as alleging little to no delay between Plaintiff's refusal and his wife's consent. Moreover, Plaintiff was still on the threshold speaking to the Officer Defendants—there was no new context in which Plaintiff's wife's consent might be construed as independent from the context in which Plaintiff refused.

Finally, just as the Ninth Circuit held in *Bonivert*, qualified immunity would not be appropriate here. *See* 883 F.3d at 876. A reasonable officer in the Officer Defendants' shoes would have known that Plaintiff's express refusal prohibited them from entering the home without a warrant.[2] "Simply put, a reasonable officer would have understood that no means no." *Id.*

For these reasons, Defendants' motion to dismiss as to Plaintiff's claim for unlawful entry and warrantless arrest is DENIED.

### B. Due Process Violations for Arrest at Night Leading to Strip- and Cavity-Search and Overnight Incarceration

Defendants' sole objection to this claim is that the Court held in its previous Order that this claim was barred by *Heck*. However, in its previous Order, the Court explicitly barred only claims

---

[2] Defendants do not argue that exigent circumstances justified the entry.

involving "[arrest despite] lack of a warrant, the coercion to consent to a search of [Plaintiff's phone], the right to remain silent, the right to counsel, and the due process right not to be interrogated." Order at 12 (footnote omitted). Though it did not explicitly leave open an avenue to pursue this Due Process claim, it did note that Plaintiff could amend to allege a claim concerning "the manner of [his] arrest." *Id.* at 13. This ruling includes being arrested at night for the purpose of being subjected to a strip- or cavity-search. A ruling for Plaintiff as to these claims would not serve to undermine his ultimate conviction, and thus are not barred by *Heck*. Importantly, Defendants do not argue that, even if true, the SAC does not sufficiently allege that these actions constitute a Due Process violation. While the Court is dubious about whether these allegations plausibly allege a Due Process violation, it cannot dismiss this claim sua sponte.

Thus, the Court DENIES Defendants' motion to dismiss as to Plaintiff's Due Process claim relating to his arrest at night leading to a strip- and cavity-search and overnight incarceration.

### C. Right to Counsel

In its Order dismissing the FAC, the Court held that Plaintiff's Sixth Amendment right-to-counsel claim was barred by *Heck* because it could undermine the validity of his conviction. Order at 12. In his SAC, Plaintiff alleges that he does not bring the traditional right to counsel claim here whereby he might seek to have any subsequent confession invalidated, but instead he seeks damages because he "suffered fear and severe emotional distress as a result of being interrogated alone, with employment of trickery, in the middle of the night, after Defendants ignored and then thwarted his request for counsel." SAC ¶ 64. Despite this restructuring, in his opposition to the present motion, Plaintiff appears to revert to a Sixth Amendment claim, noting that Plaintiff repeatedly invoked his right to counsel and was denied this right. *See* Opp. at 10, ECF 48. The Court reiterates here that, to the extent this claim is premised on the Sixth Amendment right to counsel, it is dismissed with prejudice. But at the hearing on the motion, Plaintiff's counsel indicated that case law supports the argument that Plaintiff can bring a claim concerning the manner in which he was interrogated without running afoul of *Heck*. The Court invited supplemental briefing on the issue.

In their reply and their supplemental briefing, Defendants argue that there can be no Fifth Amendment violation here under the Supreme Court's holding in *Chavez v. Martinez*, 538 U.S. 760 (2003), which they argue held there can be no *Miranda* violation if the fruits of the violation are not subsequently used against the defendant. They also distinguish *Sessoms v. Keller*, 2018 WL 3917842 (E.D. Cal. Aug. 15, 2018), relied on by Plaintiff's counsel in oral argument, because the defendant's statements were used against him, such that *Chavez* did not apply. *Id.* at *1–*2. Likewise, Defendants argue that Plaintiff's allegations do no allege a substantive due process violation because this conduct did not amount to psychological coercion. *See* Def. Suppl. Br. at 2, ECF 53.

Plaintiff likewise relies on *Chavez*, which he claims held that Sixth Amendment and Due Process rights can be violated even where no incriminating statement is used in a prosecution. Pl. Suppl. Br. at 1, ECF 55. He claims that the recent decision in *Sessoms* specifically held that a plaintiff can state a § 1983 Due Process claim where the police's conduct is "egregious" and represents a "calculated plan" to ignore the subject's invocation. *Id.* Plaintiff also relied on the Ninth Circuit decision in *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992), which he argues holds that a Due Process violation can support a § 1983 claim even when there is no ultimate confession from the plaintiff. He argues that this holding was confirmed in *Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017), which explained that *Chavez* did not overrule *Cooper*.

As an initial matter, Plaintiff nowhere raises a potential *Miranda* violation, so Defendants' arguments that *Chavez* bars such claims are beside the point. Instead, Plaintiff seemingly relies on *Chavez* for its holding that "coercive police interrogation tactics could, if extreme, violate substantive due process" under the Fourteenth Amendment. *Sessoms*, 2018 WL 3917842, at *2 n.1. Moreover, though Plaintiff argues that both *Chavez* and *Sessoms* allow for Sixth Amendment claims, neither case mentions the Sixth Amendment. Though the Ninth Circuit's decision in *Park* does address the Sixth Amendment, the claim there involved a Sixth Amendment right to compulsory process, not the Sixth Amendment right to counsel. *See* 851 F.3d at 927. What's more, *Chavez* was discussed in the context of whether the plaintiff could prove that the denial of compulsory process was material to her defense. *See id.* at 923. Finally, that case ended in an

9

acquittal, rendering *Heck* inapplicable. Plaintiff points to no case in which a court held that a claim for violation of the Sixth Amendment right to counsel can be brought despite *Heck*'s proscriptions. As such, this Court looks to whether Plaintiff has plausibly alleged a substantive due process right violation based on Defendants' action surrounding Plaintiff's interrogation and invocation of counsel.

To violate substantive due process, the methods used must be "so brutal and so offensive to human dignity" that they "shoc[k] the conscience." *Chavez*, 538 U.S. at 774 (plurality opinion) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952) (overturning conviction based on evidence obtained by involuntary stomach pumping)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," and therefore a violation of substantive due process. *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Though "psychological coercion" can be sufficient to state a claim, the burden of showing such coercion is extremely high. For example, in *Cooper*, 963 F.2d at 1248, relied on by Plaintiff, the Court found psychological coercion where the officers' techniques were "sophisticated psychological torture" designed to "extract a confession" after "hours of mistreatment," the "twentieth-century inquisitorial version of the Star Chamber."

Plaintiff has not come close to alleging egregious conduct on the part of the officers sufficient to shock the conscience. At most, Plaintiff alleges that the officers kept Plaintiff from his attorney for "hours" while they interrogated him at night and that they employed "unsavory interrogation techniques," such as lying and pressuring Plaintiff to consent to a search (though he does not allege what this pressure looked like). *See* SAC ¶¶ 44–46, 63. Such allegations cannot plausibly allege a substantive due process claim.

After two opportunities, Plaintiff still fails to state a valid claim based on his "right to counsel" (interpreted generously to encompass any Defendant action surrounding his interrogation and invocation of his counsel). The Court thus finds that further amendment would be futile and GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss as to Plaintiff's claims related to his right to counsel.

### D. *Monell* Claim

Defendants' only argument under *Monell* is that Plaintiff has not alleged an underlying constitutional violation to support his *Monell* claims against the City and MVPD. *See* Mot. at 5–6. The Court DENIES Defendants' motion to dismiss the *Monell* claims as to those underlying claims that Plaintiff has sufficiently alleged. The Court GRANTS as to *Monell* claims premised on theories of liability and claims which the Court has otherwise dismissed.

### E. California Bane Civil Rights Act

Plaintiff's final claim is under the Bane Act for injunctive relief. "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Article III standing is a requirement for this Court to have subject-matter jurisdiction over the claim. The Court thus ORDERS the parties to file three-page supplemental briefs **on or before November 9, 2018**, addressing whether the Court has subject-matter jurisdiction over this claim under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) and subsequent case law.

## IV. ORDER

For the foregoing reasons, the Court ORDERS that Defendants' motion to dismiss is:

(1) DENIED as to Plaintiff's § 1983 claim against the Officer Defendants for unlawful entry and warrantless arrest.

(2) DENIED as to Plaintiff's § 1983 claim against the Officer Defendants for Due Process violations relating to his arrest at night leading to a strip- and cavity-search and overnight incarceration.

(3) GRANTED WITHOUT LEAVE TO AMEND as to Plaintiff's claims related to his right to counsel.

(4) DENIED as to Plaintiff's *Monell* claims premised on underlying constitutional violations that the Court does not herein dismiss. GRANTED WITHOUT LEAVE TO AMEND as to the remainder.

(5) Plaintiff and Defendants shall file three-page supplemental briefs, in

accordance with the Local Rules brief-formatting requirements, **on or before Friday, November 9, 2018**, addressing whether Plaintiff has standing to bring his Bane Act claims under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) and subsequent case law.

**IT IS SO ORDERED.**

Dated: October 26, 2018

_____
BETH LABSON FREEMAN
United States District Judge