UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES R. ZUEGEL,<br><br>        Plaintiff,<br><br>v.<br><br>MOUNTAIN VIEW POLICE DEPARTMENT (MVPD), et al.,<br><br>        Defendants. | Case No.  17-cv-03249-BLF<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>[Re: ECF 113, 114, 115, 116, 117, 119, 120, 121, 122, 123] |

In preparation for trial, which is set to begin on November 16, 2020, the parties submitted ten motions in limine. The Court held a final pretrial conference on October 15, 2020. With respect to each side's motions in limine ("MILs"), the Court rules as follows, for the reasons set forth below and as stated on the record at the pretrial conference.

**A. Plaintiff's Motions in Limine**

The Court will address each in turn.

      **1. Plaintiff's Motion in Limine No. 1 For Exclusion of Nature of Suspected Crime, Probable Cause (or Lack Thereof), Charges (if any) Filed, Outcome of the Case, Guilt or Innocence, and Ethnicity and Identity of Alleged Victim**

Plaintiff James Zuegel ("Zuegel") moves to preclude evidence and testimony related to Plaintiff's June 7, 2015 arrest by Defendants Patrick Ward and Britton Moore of the Mountain View Police Department ("Defendants"). *See* Zuegel MIL No. 1, ECF 113. Specifically, Zuegel moves to exclude: 1) The nature of the offense for which Zuegel was arrested; 2) The presence or absence of probable cause to arrest; 2a) The identity and ethnicity of the alleged victim; 3) Whether charges were filed against Zuegel (and included in this, the nature of any charges); 4)

The ultimate outcome of the arrest; and 5) Zuegel's guilt or innocence of any criminal offense. *Id.* 1. Zuegel argues that this evidence is irrelevant under Federal Rule of Evidence ("FRE") 401 and 402 and that testimony about charges of child molestation would confuse the issues still live in the case. *See* FRE 403. Zuegel also moves to exclude references to "probable cause" because he feels this would confuse the jury, with the probative value outweighed by danger of unfair prejudice. *Id.* 4.

Defendants argue the evidence of the underlying crime is relevant to the officers' conduct on June 7, 2015, when they came to Zuegel's house and arrested him. Opp'n to Zuegel MIL No. 1, ECF 132. Specifically, the nature of Zuegel's alleged crime (lewd and lascivious acts upon a child under the age of 14, a felony) is relevant under FRE 403 to understanding why Defendants were arresting him at home late on a Sunday night. *Id.* 2. Also, references to the incident at the YMCA occur throughout the video of the arrest and cannot meaningfully be redacted. *Id.* Defendants also state that it is important that the jury be instructed that there is no probable cause question in this case because the validity of the arrest is not at issue. *Id.* Finally, Defendants claim that evidence of the nature of the crime and the criminal prosecution are probative regarding damages claims. *Id.* 3–4.

Regarding Zuegel's first request, the exclusion of testimony and evidence of the nature of the offense for which he was arrested, the Court views this as an attempt to sanitize the entire case. This would be prejudicial to Defendants. The Court will limit the discussion of the nature of the charges and why Defendants were at the Zuegel house by excluding the police report and the videotape of the police interviews with the alleged victim, her mother, and her friend. Defense counsel indicated at the pretrial conference that he did not object. Weighing the evidence under FRE 403, the Court finds that the nature of the investigation and arrest are probative of the police conduct that night and why they were at the Zuegel house on a Sunday night. The Court also considers this highly probative of the jury's consideration of damages. Defendants have the right to suggest that the damages, if any, should be lower because the harm caused to Zuegel was based on the nature of the charges and not the way he was treated by the police. The Court does agree with Zuegel that these charges do have the potential to cause some prejudice, but any prejudice is

2

outweighed by the probative value. As discussed at the pre-trial conference, a limiting instruction to the jury that the Court can read mid-trial to assist them in understanding the nature of these circumstances would be appropriate. The instruction can advise that the investigation and arrest were for different charges than the charge that ultimately resulted in Zuegel's conviction. Such instruction would help dampen any prejudicial effect. Accordingly, Zuegel's motion is **DENIED** as to excluding 1) the nature of the offense for which Plaintiff was arrested.

Regarding 2) the presence or absence of probable cause to arrest, the Court will **GRANT** Zuegel's motion as to the evidence. As discussed at the pretrial conference, a jury instruction regarding probable cause will obviate any need for testimony regarding probable cause. The Court **DEFERS** the issue to a jury instruction.

Regarding 2a) the identity and ethnicity of the victim, the Court **GRANTS** Zuegel's motion.

The Court **DENIES** Zuegel's motion as to 3) whether charges were filed against Plaintiff (and included in this, the nature of any charges), because, as explained above, it is relevant to any damages calculation.

The Court **DEFERS** ruling on 4) the ultimate outcome of the arrest (Zuegel's plea to disorderly conduct by making noise in a public place, which included three years of probation, 75 hours of community service, and a prohibition from coming within 300 yards of the YMCA). Defendants will have to demonstrate the relevance of this information should they seek to introduce it at trial since Zuegel does not plan to introduce it in his case-in-chief.

Finally, the Court **GRANTS** on 5) Zuegel's guilt or innocence of any criminal offense, excluding any testimony on that subject. The outcome of the criminal case is a fact. Guilt or innocence is a whole different trial.

### 2. Plaintiff's MIL No. 2 for Exclusion or Restriction of Testimony of Dr. Laura Davies

Zuegel moves to exclude or restrict the testimony of defense psychiatry expert Dr. Laura Davies, who performed an independent medical exam. *See* Zuegel MIL No. 2, ECF 114. Zuegel's basis for doing so is because "Dr. Davies ingratiated herself with Mr. Zuegel" and encouraged or

3

allowed him to ramble on concerning issues the parties had previously agreed would be prohibited subject matter and much other irrelevant and prejudicial subject matter. *Id.* 1. Dr. Davies additionally erroneously included in her report that Zuegel admitted to touching the girl at the YMCA, an issue that Plaintiff's counsel confronted Dr. Davies about at her deposition. *Id.* 2. Zuegel also argues that a complete exclusion would "provide a more level playing field" since his psychiatry expert is unavailable to testify due to a recent diagnosis of stage four spinal cancer. *Id.* 2. If not excluded entirely, Zuegel asks for exclusion of the following subject matters: 1) events at the YMCA and interaction with police at the Zuegel home; 2) references to the Zuegel marriage; 3) references to Zuegel's wealth and earning power; 4) references to neurotic women and women in general; 5) references to Zuegel's purported "mild paranoia" and "grandiosity"; 6) references to Zuegel's employment, relationship with supervisors, and relationship with criminal case defense counsel; 7) admission of Dr. Davies's Rule 26 report and the Independent Medical Evaluation ("IME") transcript at trial; 8) admission of videotape of acrimonious interactions during first day of Davies deposition. *Id.* 3–5.

Defendants argues that Dr. Davies should not be barred from testifying. *See* Opp'n to Zuegel MIL No. 2, ECF 133. As to the mistaken statement that Zuegel admitted to touching the girl, Defendants maintain it was an honest mistake and acknowledge that it is fair game for Zuegel to explore this mistake during cross-examination. *Id.* 3. Defendants also argue that it was Zuegel who willingly discussed subject matter his lawyer had deemed off limits and cited four different instances where Dr. Davies tried to direct him away from those topics. *Id.* 4. Defendants also maintain that, because Zuegel is claiming that his interaction with the Mountain View Police Department has impaired his marriage—and his psychiatrist's notes are full of references to his marital problems—some detail about his marital difficulties are relevant to the case. *Id.* Defendant argues similarly for his wealth and finances, to the extent they related to his ability to work full-time, gain new employment, and otherwise maintain a high level of function. *Id.* 4. As for Dr. Davies's opinions as to Zuegel's personality, Defendants argue these are relevant because they help explain how Zuegel's emotional issues are separate from anything that happened the night of his arrest. *Id.* 4–5. Finally, Defendants point out that Plaintiff's counsel disclosed the unfortunate

4

medical situation with Zuegel's psychiatry expert on April 24, 2020 (almost six months ago), and Defense counsel immediately worked with Plaintiff's counsel to waive the Rule 26 report and agreed that portions of the deposition could be read into evidence at trial. *Id.* 3 n.1.

While the Court acknowledges the terribly tragedy Zuegel's expert is going through with his cancer diagnosis, this is not a basis to exclude Dr. Davies entirely. The Court declines to do so, as Zuegel has the opportunity to conduct as much cross-examination as he would like.

As to Zuegel's enumerated requests for exclusion, the Court rules as follows. First, 1) Events at the YMCA and interaction with police at Zuegel home: Dr. Davies is not a fact witness, and these statements are not admissions by Zuegel. She is giving her opinions as to his mental state, and the Court will not limit any testimony she may give about how the events at the YMCA played into her opinions about Zuegel's mental state. The MIL is **DENIED** with regard to this subject matter.

The second topic, 2) References to the Zuegel marriage: The Court **DEFERS** on this topic. If Zuegel's counsel opens the door through Zuegel's testimony or his own experts, then Dr. Davies may testify on this topic.

The third topic, 3) References to Zuegel's wealth and earning power: The Court **DENIES** on this ground. The Court is open to giving the jury a limiting instruction so that they understand that testimony from Dr. Davies on this subject is only related to her diagnosis of Zuegel.

The fourth topic, 4) References to neurotic women and women in general: The Court **DENIES** as to this subject matter. The Court reviewed Dr. Davies's questioning of Zuegel and did not find anything inappropriate in her questions. These were Zuegel's own statements. To the extent that his comments assisted her in forming her opinion and making her diagnosis, she is free to testify to them.

The fifth topic, 5) References to Zuegel's purported "mild paranoia" and "grandiosity:" The Court **DENIES** as to this subject matter because this goes to Dr. Davies's opinions that formed her diagnosis.

The sixth topic, 6) References to Zuegel's employment, relationship with supervisors, and relationship with criminal case defense counsel, again goes to whether Zuegel is claiming damages

5

from this incident or from other events and stressors in his life. The MIL is **DENIED** as to this subject.

The seventh topic, 7) admission of Dr. Davies's Rule 26 report and the Independent Medical Evaluation ("IME") transcript at trial, the Court will **GRANT**. Reports do not come into evidence. It can be used for cross-examination, certainly, but the Court grants the exclusion of the documents themselves. A brief potion of the interview audio may be played only if Zuegel's counsel opens the door and attacks Dr. Davies to show bias. Defense counsel has the right to play the brief portion of the tape to portray her misstatement on the incident at the YMCA as a mistake, not bias.

The eighth topic, 8) admission of videotape of acrimonious interactions during first day of Davies deposition, the Court will **GRANT** on the basis that it does not appear to be relevant to any issue in the trial.

### 3. Plaintiff's MIL No. 3 For Exclusion or Restriction of Testimony of Robert J. Fonzi

Zuegel moves to exclude or restrict the testimony of defense police practices expert Robert J. Fonzi. *See* Zuegel MIL No. 3, ECF 115. Zuegel argues that Fonzi should be excluded from testifying to whether the police had consent to enter the Zuegel residence because this is for the jury to decide, not him. *Id.* 2–3. Zuegel also argues that Fonzi is not qualified to testify regarding consent to enter. *Id.* 3. Further, if Fonzi is permitted to testify, Zuegel argues that he should not be permitted to testify regarding the Peace Officer Standards and Training ("POST") Manual because it would confuse the jury and prejudice Zuegel. *Id.* 4. Finally, Zuegel argues that Fonzi should not be able to testify concerning police practices, his experience in law enforcement, or reasonable police officers because that would usurp the jury's role. *Id.* 4–5.

Defendants respond that while Fonzi cannot opine on pure legal opinions, FRE 704(a) permits him to testify that the officers' actions were consistent with police standards and training. *See* Opp'n to Zuegel MIL No. 3, ECF 134. Further, Zuegel's other issues with Fonzi go to the weight of his testimony, not its admissibility. *Id.* 3.

The Court finds that Fonzi qualifies as an expert in police practices, and he has

1  been qualified to testify as an expert in over 300 cases, as Zuegel acknowledges. The Court will
2  not allow Fonzi to testify about what the law is or about the ultimate issue of whether there was
3  consent to enter the house. In terms of police practices, especially as relevant to the *Monell* claim,
4  the Court **DENIES** this motion, as Fonzi will be permitted to testify about police practices in
5  general. The Court also will not exclude references to the POST Manual, which is used to train
6  every police officer in the state of California. Zuegel is welcome to attack the credibility of the
7  POST Manual if he so chooses.

8  On any other issue related to Fonzi's testimony, the Court **DEFERS**.

### 4. Plaintiff's MIL No. 4 For Exclusion of Testimony of Defense Expert Witness Greg Stutchman

Zuegel seeks to exclude defense expert witness Greg Stutchman's testimony in its entirety on the basis that it is "junk science." *See* Zuegel MIL No. 4, ECF 116. Defendants respond that Zuegel's qualms with Stutchman's testimony go to its weight, not its admissibility. *See* Opp'n to Zuegel MIL No. 4, ECF 135.

The Court **GRANTS** this motion as to Stutchman's fantastical opinion about what was actually said on the BodyCam video, as this opinion differs from the testimony of everyone in the room who heard it. Stutchman is permitted to testify that what was said during the portion of the audio in question cannot be recovered. The Court notes that Zuegel's expert agrees with this, so the parties may want to consider a stipulation on this point instead of putting experts on the stand.

### 5. Plaintiff's MIL No. 5 For Exclusion of Lisa Zuegel's August 25, 2020 E-Mail to Deputy Police Chief Hsiung

Zuegel moves to exclude an August 25, 2020 email his wife sent to deputy police chief Christopher Hsiung concerning their austic son's new inclusive supporting living home in downtown Mountain View. *See* Zuegel MIL No. 5, ECF 117. Zuegel moves to exclude this on the basis that it is irrelevant to the issue of whether the police had valid consent to enter the Zuegel home five years ago. *Id.* 3.

Defendants respond that Zuegel is making significant emotional distress and damages claims, some of which are based off of his distrust of police officers. *See* Opp'n to Zuegel MIL

No. 5, ECF 136. Defendants argue this email is highly relevant to Zuegel's damages claims because it tends to show that the Zuegels have a more favorable view of law enforcement than they are expected to present to the jury. *Id.* 3. Defendants also argue that if Zuegel claims that he and his wife now live in fear of their autistic son getting shot and killed by police, this email is highly relevant because it shows that steps have been put in place to safeguard against Mountain View police officers overeating to a call involving their son. *Id.* 3–4.

The Court **DEFERS** because it needs to hear the Zuegels' testimony regarding their view of the police.

### B. Defendants' Motions in Limine

The Court also addresses each of these in turn.

#### 1. Defendants' MIL No. 1 to Exclude Reference to Other Incidents, Claims, and Lawsuits Against the Mountain View Police Department

Defendants request exclusion of evidence of other complaints by arrestees of the Mountain View Police Department as well as an index of other child abuse arrests that were produced in discovery on the basis that they are not relevant, and, if the Court were to find the opposite, then their risk of prejudice strongly outweighs any probative value. *See* Defendants' MIL No. 1, ECF 119.

Zuegel responds that if Defendants present evidence regarding the underlying child molestation allegations leading to Zuegel's arrest, then he should be able to introduce evidence concerning police misconduct in other cases to show that once child molestation is suspected, ill-trained Mountain View police officers assume guilt without meaningful investigation. *See* Opp'n to Defendants' MIL No. 1, ECF 138. Zuegel mentions two specific cases that he would potentially introduce: *Doe v. Kamarei, et al.*, No. 18-CV-324275, in Santa Clara County Superior Court, and *Lother v. City of Mountain View, et al*, No. 19-cv-05848-VKD (N.D. Cal April 8, 2020).

The Court does not consider *Lother* and *Doe* relevant to the issue in this case, whether the police had consent to enter the house. Morever, as Zuegel acknowledges, in order to prove the issues identified as relevant, Zuegel would have to call the parties in these cases to prove the alleged inappropriate conduct because the *Lother* case settled without an admission of liability.

8

Accordingly, the Court **GRANTS** the motion to exclude the *Lother* and *Doe* cases because they are not sufficiently probative of any issue remaining in the case and introducing them would be an undue consumption of time and confuse the jury.

### 2. Defendants' MIL No. 2 to Preclude Testimony by Maurice Leibenstern or the Allegation that He Went to the Police Station While Plaintiff was Being Interviewed

Defendants argue that evidence and testimony that Maurice Leinbenstern, a lawyer contacted by the Zuegels after Zuegel's arrest, went to the Mountain View police station and was told that Zuegel was not there when he was in the midst of his post-arrest interrogation should be excluded under FRE 401 because it is not relevant. *See* Defendants' MIL No. 2, ECF 120. Defendants also argue it should be excluded under FRE 403 because, as a lawyer, Leinbenstern's testimony would be more prejudicial than probative and it would consume in inordinate amount of trial time. *Id.* 2–3. Zuegel responds that the testimony is relevant because the way he was treated by the Mountain View police demonstrates that the officers were so committed to their plan to arrest Zuegel that they disregarded his constitutional rights and their own internal policies. Opp'n to Defendants' MIL No. 2, ECF 139. As for Defendants' contention that the jury would give undue weight to the testimony of a lawyer, "this should not pose a grave concern. Since Shakespeare's time, much of the public has mistrusted and disliked attorneys." *Id.* 2.

Zuegel has not presented evidence or a theory tying Leinbenstern to the two Defendant officers in this case. There are no allegations that either officer encountered Leinbenstern at the police station. In fact, Leibenstern is unable to identify the person he spoke to at the police station. The Court does not find Leinbenstern's experience or potential testimony probative to any remaining issue in this case. The Court **GRANTS** this MIL.

### 3. Defendants' MIL No. 3 to Preclude Cross-Examination of Defense Expert Witness Robert Fonzi's Opinions in Other Cases Involving Shootings

Defendants move to preclude any cross-examination of their defense expert Fonzi on his opinions in cases involving "an extreme use of force like the deployment of a firearm" because such testimony is not relevant to this case. *See* Defendants' MIL No. 3, ECF 121. Given the

9

current climate and coverage of recent police shootings in the media, Defendants argue this type of questioning poses a supreme risk of unfair prejudice. *Id.* 2–3.

Zuegel contends that he will not cross-examine Fonzi regarding gory details of any particular case but that his history of testifying in support of the police in use-of-force cases is relevant to show bias. *See* Opp'n to Defendants' MIL No. 3, ECF 140.

The Court agrees with Zuegel and **DENIES** this motion. Defense counsel is, of course, able to object if he feels Zuegel's counsel goes too far with her questioning. The Court thinks it is fair, though, to cross-examine Fonzi about his prior work in order to show bias. The Court would allow a limiting instruction that the cross-examination of his other cases only goes to the issue of bias and nothing else.

### 4. Defendants' MIL No. 4 to Bifurcate Punitive Damages and Exclude Evidence of Defendants' Finances During Liability Phase

Defendants next request to bifurcate the issue of punitive damages from the liability phase of the case because the jury may not need to reach this issue. *See* Defendants' MIL No. 4, ECF 122. Further, prematurely hearing evidence of Defendants' income and assets may cause prejudice. *Id.* 3–4.

Zuegel responds that he initially proposed bifurcating the punitive damages phase but was not entirely clear on what form, exactly, Defendants were advocating for this. *See* Opp'n to Defendants' MIL No. 4, ECF 141.

Evidence of a defendant's wealth is ordinarily irrelevant to any issue of liability or compensatory damages, *see Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977), and Zuegel has made no showing to the contrary. At the pretrial conference Defense counsel clarified that his request was for bifurcating the issue of Defendants' finances from the rest of the trial. The parties indicated that they agreed that they jury should reach both liability and whether there was punitive conduct in the first phase before hearing testimony on Defendants' finances, if necessary. Therefore, the Court **GRANTS** this motion as modified.

### 5. Defendants' MIL No. 5 to Exclude Evidence of Comments by Dismissed Officer Marco Garcia Regarding the Veracity of Child Abuse Victims

Defendants' final motion seeks to exclude statements made by officer Marco Garcia, who has been dismissed from this case, that indicate that he believes 98% of child abuse victims tell the truth. *See* Defendants' MIL No. 5, ECF 123. Defendants base this argument on the grounds that the comments are irrelevant under FRE 401 and distracting to the jury under FRE 403. *Id.* 2–3. Zuegel argues that if Defendants introduce evidence besmirching him as a child molester, then he should be able to introduce evidence demonstrating that the Mountain View Police Department does not carefully investigate child molestation allegations before making arrests because its officers believe that virtually all children's allegations of sexual molestation are true. *See* Opp'n to Defendants' MIL No. 5, ECF 142.

The Court **DENIES** this motion on the basis that what Garcia said in his deposition could be probative of the police officers' state of mind when they came to the door and whether they believed they had consent to enter or not.

**C. Order**

For the foregoing reasons, it is hereby ordered that:

1) Zuegel's MIL No. 1 is GRANTED IN PART, DENIED IN PART, and the Court DEFERS IN PART;
2) Zuegel's MIL No. 2 is GRANTED IN PART, DENIED IN PART, and the Court DEFERS IN PART;
3) Zuegel's MIL No. 3 is DENIED IN PART, and the Court DEFERS IN PART;
4) Zuegel's MIL No. 4 is GRANTED IN PART;
5) On Zuegel's MIL No. 5, the Court DEFERS;
6) Defendants' MIL No. 1 is GRANTED as to the *Lother* and *Doe* cases;
7) Defendants' MIL No. 2 is GRANTED;
8) Defendants' MIL No. 3 is DENIED;
9) Defendants' MIL No. 4 is GRANTED as modified; and
10) Defendants' MIL No. is DENIED

**IT IS SO ORDERED.**

11

Dated: October 22, 2020

_____
BETH LABSON FREEMAN
United States District Judge

12