# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| JAMES R. ZUEGEL, | Case No. 17-cv-03249-BLF |
| Plaintiff, | |
| v. | **ORDER DENYING RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW; AND GRANTING IN PART MOTIONS FOR ATTORNEY FEES AND LITIGATION EXPENSES AND REVIEW OF TAXATION OF COSTS** |
| MOUNTAIN VIEW POLICE DEPARTMENT (MVPD), et al., | |
| Defendants. | |
| | [Re: ECF 182, 189, 212] |

This case arose from the June 7, 2015 arrest of Plaintiff James Zuegel at his home. Zuegel sued the Mountain View Police Department ("MVPD"), the City of Mountain View ("the City") and officers Patrick Ward and Britton Moore (collectively, "Defendants"), and this case went to trial beginning on November 13, 2021. *See* Min. Entry, ECF 162. The jury was asked to decide four questions: Did either officer enter Zuegel's residence in violation of the Fourth Amendment; Did either officer remain in Zuegel's residence in violation of the Fourth Amendment; Was the unlawful entry or remaining presence in the residence the product of a deliberate indifference by the City of Mountain View to the need to properly train its police officers; Did any officer engage in conduct that was malicious, oppressive, or in reckless disregard to Plaintiff's rights?" *See* Jury Verdict, ECF 178.

On November 17, 2020, at the close of Zuegel's case, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). Decl. of Jon Heaberlin ("Heaberlin Decl."), Ex. A., Trial Tr. 506:22-507:13, ECF 189-3. The Court heard argument on the motion the next day outside the presence of the jury and deferred ruling on the motion. *Id.* 565:16-17; 573:9-581:18; 586:2-7. On November 20, 2021 the jury returned its verdict, finding

that the officers had not entered the residence in violation of the Fourth Amendment, but the jury found that both officers remained in the residence in violation of Zuegel's Fourth Amendment rights. *See* Jury Verdict. The jury found that the unlawful remaining presence in the residence was not the product of a deliberate indifference by the City of Mountain View to the need to properly train its police officers. *Id.* The jury did not award punitive damages. Zuegel was awarded $3,000 in damages, and Defendants Moore and Ward were each found 50% responsible for the wrongdoing. *Id.*

Now before the Court is Defendants' renewed motion for judgment as a matter of law in accordance with Federal Rule of Civil Procedure 50(b). *See* Mot. ("Rule 50(b) Mot."), ECF 189-1. Defendants argue that Moore and Ward are entitled to qualified immunity because there was no clearly established law which required them to leave the Zuegel residence without arresting him upon his withdrawal of consent. *See id.* Also before the Court are Zuegel's motions for attorney's fees and expenses, *see* Mot. ("Fees Mot."), ECF 182, and review of taxation and costs, *see* Mot. ("Taxation Mot."), ECF 212. For the reasons stated below, the Court DENIES Defendants' Rule 50(b) motion and GRANTS IN PART Zuegel's Fees and Taxation motions.

## I.     BACKGROUND

### A.     Pre-Trial Proceedings

Zuegel filed his initial complaint in this case pro se on June 6, 2017. *See* Compl., ECF 1. He retained counsel and filed an amended complaint on September 13, 2017. *See* Am. Compl., ECF 10. Zuegel asserted six causes of action against: (1) Defendants Moore, Ward, and Garcia ("Officer Defendants") for violations of 42 U.S.C. § 1983; (2) MVPD and the City for violations of § 1983 (*Monell* Claim); (3) all Defendants for violations of the Bane Act, Cal. Civ. Code section 52.1(b); (4) all Defendants for false arrest and false imprisonment; (5) all Defendants for intentional infliction of emotional distress; and (6) all Defendants for reckless and grossly negligent infliction of emotional distress. *Id.* In an April 19, 2018 order granting in part Defendants' motion to dismiss, the Court held that many of the claims were barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that

"Section 1983 [claims] are not cognizable when 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction.'" Order 6, ECF 40 (quoting *Heck*, 512 U.S. at 481–82).[1] The Court first held that *Heck* barred Plaintiff's claim for unlawful arrest without probable cause. *See id.* 11. The Court then held that Plaintiff's § 1983 claims were barred by *Heck* to the extent they argue any of the following violations: "[arrest despite] lack of a warrant, the coercion to consent to a search of [Plaintiff's phone], the right to remain silent, the right to counsel, and the due process right not to be interrogated." *Id.* 12 (footnote omitted). "[B]ecause Plaintiff could have challenged all of that conduct in motions to suppress during the criminal proceedings or can pursue it in habeas proceedings," *Heck* bars such claims. *Id.* Since amendment would have been futile, the Court dismissed these claims without leave to amend. *See id.* 11–12. The Court then granted a second motion to dismiss by Defendants, and Zuegel filed his third amended complaint, which remained the operative complaint in the case, on June 29, 2020. *See* Third Am. Compl., ECF 97. After the Court's summary judgment order on August 27, 2020, the only claims that remained in the case were a 1983 claim against Defendants Moore and Ward based on a violation of the Fourth Amendment for a warrantless entry and arrest and a *Monell* claim against the City and MVPD based on a failure-to-train theory related to the Fourth Amendment claim. *See* Order ("MSJ Order"), ECF 108.

### B. Trial

The following facts are taken from the testimony and evidence presented at trial and the record in this action. Zuegel testified first and said he never consented to the officer Defendants entering his home. Decl. of Violet Grayson ("Grayson Decl."), Ex. 1, Trial Tr. 143:2-150:20, ECF 191-1. He also testified that, while his wife initially invited the officer Defendants into their home, once the front door opened, she blocked the officer Defendants from entering and caused them to step back into the threshold as she said, "stay here." *Id.* 151:10-153:10. The officer Defendants entered nonetheless. *Id.* 153:5-10. Zuegel testified that a few minutes after the officer Defendants were in his house, he told them he would not speak to them without a lawyer and said, "please

---

[1] Zuegel was charged in the underlying criminal case and pled no contest to a misdemeanor offense. MSJ Order 4.

leave." *Id.* 154:7-9, 16-18. Instead of leaving, they looked at each other for two or three seconds and then arrested him. *Id.* 154:19-24.

Lisa Zuegel, James Zuegel's wife, testified that she did initially invite the officer Defendants into the house because she thought she had to talk to them and thought it was better to talk inside than outside on their busy street corner. Grayson Decl., Ex. 2, Trial Tr. 233:6-25, ECF 191-2. She testified that as Defendant Moore was entering the house, "I could feel at that point that I had made a really big mistake, like I never should have invited them in." *Id.* 235:2-5. Lisa Zuegel testified that she stepped forward as Defendant Moore stepped backward, and she told him to "stay here." *Id.* 235:6-236:13. The officer Defendants continued to enter the house. *Id.* 236:14-17. She testified that, "when he [Defendant Moore] had taken a step back, I was very clear that I didn't want them there anymore. I said, 'stay here.'" *Id.* 235:21-24.

Lisa Zuegel testified that as soon as the police mentioned an interview, she said that there would be no interview, and her husband echoed that statement and said they would not speak until their attorney was present. *Id.* 237:4-12. She testified that Zuegel then very clearly said, "please leave." *Id.* 237:13-14. According to Lisa Zuegel, the officer Defendants glanced at each other and then put Zuegel in handcuffs. *Id.* 237:17-19.

Defendant Ward testified that he felt they did not yet have enough information to obtain an arrest warrant for Zuegel when they arrived at his house. Grayson Decl., Ex. 5, Trial Tr. 520:5-8, ECF 191-5. He also testified that he did not hear Zuegel ask them to leave the house. *Id.* 550:4-8. Defendant Ward testified that, in his mind, Zuegel's arrest had already begun before Zuegel said, "please leave." Heaberlin Decl., Ex. A, Trial Tr. 550:12-22. Defendant Ward testified that he had pointed and motioned toward his handcuffs as a "signal" that the arrest had begun before Zuegel said anything. *Id.* 550:23-551:17. Defendant Moore also testified that Defendant Ward had tapped his handcuffs after Zuegel requested an attorney as a signal that they were going to place Zuegel under arrest. *Id.* 660:6-661:25. Defendant Moore also testified that the arrest had begun before Zuegel said "please leave." *Id.* 661:19-25.

The Defense police practices expert, Robert Fonzi, testified regarding the withdraw of consent. When asked if a person who has given consent (where it is required by the Fourth

Amendment) may withdraw that consent, he answered, "yes, they may." Grayson Decl., Ex. 6, Trial Tr. 717:7-12, ECF 191-6. He also testified that he agreed that consent can be rescinded expressly or by implication, and any rescinded consent decision is binding on the officers. *Id.* 717:9-21.

In addition to witness testimony, the jury also watched footage from the Body-Worn Camera Defendant Ward was wearing at the time of the arrest.

## II. RULE 50(B) MOTION

### A. Legal Standard

Motions for judgment as a matter of law are governed by Federal Rule of Civil Procedure 50. Rule 50(a) governs pre-verdict motions, and Rule 50(b) applies to post-verdict motions. *Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1008 (N.D. Cal. 2012). In the Ninth Circuit, a motion for judgment as a matter of law pursuant to Rule 50(b) is appropriate when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009); *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). Thus, a Rule 50(b) motion should not "advance additional grounds that were not raised in the pre-verdict motion." *Yield Dynamics, Inc. v. TEA Sys. Corp.*, No. C 06-0331 VRW, 2007 WL 9812915, at *2 (N.D. Cal. Aug. 15, 2007) (internal citation omitted). "All evidence must be viewed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in that party's favor." *Cotton*, 869 F. Supp. 2d at 1008 (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)). The Court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." *FiftySix Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008)). "[I]n entertaining a motion for judgment as a matter of law, the court ... may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A jury verdict "must be upheld if it is supported by substantial evidence ... even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

### B.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part approach for analyzing qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court recently reiterated the longstanding principle that "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778-79.

Importantly, though, "'it is not necessary that the alleged acts have been previously held unconstitutional' in order to determine that a right was clearly established, 'as long as the unlawfulness [of defendant's actions] was apparent in light of pre-existing law.'" *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018) (alterations in original) (quoting *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005)). There

can be "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Vazquez v. City of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 590). The relevant inquiry is "whether the officer had fair notice that her conduct was unlawful." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)).

### C.    Discussion

The sole issue for Defendants' Rule 50(b) motion is whether the officer Defendants are entitled to qualified immunity as a matter of law because the law was not clearly established that officers are required to depart a residence after consent has been withdrawn. Mot. 3, 8-9. Defendants claim there is no Supreme Court or Ninth Circuit law on this point. Mot. 8. Zuegel disagrees and cites *United States v. McWeeney*, 454 F.3d 1030 (9th Cir. 2006). Opp'n 10. The Court agrees with Zuegel that *McWeeney* and Supreme Court precedent clearly establish in the Ninth Circuit that officers are required to immediately cease their activity after consent has been withdrawn.

The Supreme Court does not draw a distinction between the Fourth Amendment protection against warrantless entries and warrantless searches, using the same law in both circumstances. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590. Indeed, the Supreme Court recently reaffirmed that there is no place like home when it comes to being free from warrantless law enforcement intrusion. *See Caniglia v. Strom*, 141 S. Ct. 1596, 1598-1600 (2021).

The Ninth Circuit interpreted Supreme Court precedent in *McWeeney* and held that "[a] suspect is free, however, after initially giving consent, to delimit or withdraw his or her consent at anytime [sic]," and "It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." *McWeeney*, 454 F.3d at 1034 (citing *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) and *United States v. Ward*, 576 F.2d 243, 244 (9th Cir. 1978)). In *McWeeney*, the defendants were pulled over by the police and orally gave consent for an officer

to look in (search) the car. *McWeeney*, 454 F.3d at 1032. Neither man was allowed to observe the search. *Id.* at 1033. At one point, an officer noticed one of the men was "looking back" as the car was searched, and one of the officers instructed the man to "to face forward and stop looking back." *Id.* The officers pulled up loose carpet in the trunk and found a handgun. *Id.*

The Ninth Circuit found that the defendants' loss of opportunity to modify or withdraw their consent to search the car was a constitutional violation. *McWeeney*, 454 F.3d at 1035. "No doubt McWeeney and Lopez gave general consent to search the car. However, they had a constitutional right to modify or withdraw their general consent at anytime [sic], including the point at which the officers prevented them from observing the search." *Id.* That constitutional right to modify or withdraw consent at any time was the right Zuegel exercised in this case, and the jury found that the officer Defendants violated it.

Defendants attempt to distinguish *McWeeney* on the basis that probable cause was absent at the time consent was withdrawn in *McWeeney*, and here, there was probable cause to arrest Zuegel.[2] Mot. 9. The Court finds that the neither the Supreme Court nor the Ninth Circuit draws this distinction in the case law.

> To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.

*Payton*, 445 U.S. at 588–89 (quoting *United States v. Reed*, 572 F.2d 412, 423 (1978)). The officer Defendants themselves testified that they did not have probable cause to arrest Zuegel prior to approaching his house, Grayson Decl., Ex. 5, Trial Tr. 520:5-8, just like the officers in *McWeeney* admitted to not having probable cause to arrest either defendant prior to finding the handgun under the trunk carpet. *McWeeney*, 454 F.3d at 1035. As Defendants admit, the jury did not accept the testimony of the officer Defendants regarding the idea that the arrest started before Zuegel said,

---

[2] Zuegel was prevented from re-litigating the issue of probable cause for his arrest under *Heck v. Humphrey* due to a plea entered in his criminal case. Heck, 512 U.S. at 486-87. The jury was instructed that it was not to consider whether the officers had valid reason to make the arrest. Jury Instr. No. 3, ECF 171.

"please leave." Mot. 5. While the jury found both officers remained in the residence in violation of Zuegel's Fourth Amendment rights, the jury was not asked a special question to determine exactly when consent was withdrawn. Drawing all reasonable inferences in favor of Zuegel, the nonmoving party, and disregarding all evidence favorable to the moving party that the jury is not required to believe, as the Court must, the Court finds that a reasonable inference can be drawn that the jury found withdrawal of consent earlier than Zuegel's statement "please leave"— the jury could have found it as early as Lisa Zuegel's statement "stay here," combined with her body movement that caused the officers to step back. And it is clear that the jury found that consent was withdrawn before the arrest, and the police remained in Zuegel's house in violation of his Fourth Amendment rights. Under *Payton* and *McWeeney*, it was clearly established that Zuegel had the right to withdraw consent for the officer Defendants to remain in his home at any time, and the officer Defendants, by ignoring the withdrawal of consent, caused a violation of his Fourth Amendment rights. Because *McWeeney* is binding precedent on this Court, the Court need not consider Defendants' citations to Sixth and Tenth Circuit law. *See Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013). Accordingly, Defendants' Rule 50(b) motion is DENIED.

## III. ATTORNEY'S FEES AND EXPENSES

Based on the jury verdict, Plaintiff James Zuegel is the prevailing party, and he is entitled to an award of reasonable attorney's fees and costs. The Court now turns to Zuegel's motions for attorney's fees and expenses, *see* Fees Mot., and review of taxation of costs, *see* Taxation Mot. The Court has considered the factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) "to be considered in the balancing process." As an initial matter, Zuegel argues that all of the expenditures included in his Bill of Costs should be awarded either as statutory costs pursuant to 28 U.S.C section 1920 or as litigation expenses pursuant to 42 U.S.C. 1988. Taxation Mot. 1. The Court agrees that the proper framework for assessing costs in this Section 1983 case is under Section 1988, and the Court will consider all Zuegel's fees and expenses arguments below.

### A. Legal Standard

Pursuant to 42 U.S.C. § 1988, "'in federal civil rights actions the court, in its discretion,

may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Barnard v. Theobald*, 721 F.3d 1069, 1076-77 (9th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983)). "Congress passed § 1988 to attract competent counsel to prosecute civil rights cases…fee awards should be the rule rather than the exception." *Barnard*, 721 F.3d at 1077 (internal quotations and citations omitted). At the same time, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Hensley*, 461 U.S. at 429 (1983). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (internal citation omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 nn. 3-4 (9th Cir. 1996) (identifying factors), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

"'[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees' under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting *Hensley*, 461 U.S. at 440). The Ninth Circuit has identified a two-step process for determining the appropriate reduction for "limited success." "The first step is to consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Webb*, 330 F.3d at 1168 (quoting *Hensley*, 461 U.S. at 434). Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Webb*,

330 F.3d at 1168 (quoting *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995)). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Webb*, 330 F.3d at 1168. "If it is impossible to isolate the truly unrelated claims from those related claims, the district court should instead reflect that limited success in *Hensley's* second step: the significance of the overall relief in relation to the hours reasonably expended on the litigation." *Webb*, 330 F.3d at 1169 (citing *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001)).

"The second step of the *Hensley* analysis is to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Webb*, 330 F.3d at 1168 (quoting *Hensley*, 461 U.S. at 434). To answer that question, courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. Fees must be reduced if "the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). To evaluate the "public benefit," courts should consider "whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations" and also consider "the public benefit of deterring unconstitutional conduct by law enforcement officials in determining the fee." *McCown*, 565 F.3d at 1103 (internal citations omitted).

With regards to costs, the district court has discretion to reduce unreasonable costs. *McCown*, 565 F.3d at 1103 n.2. (citing *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005)).

**B.    Reasonable Hourly Billing Rates**

Under Section 1988, fees "'are to be calculated according to the prevailing market rates in the relevant community'...taking into consideration 'the experience, skill, and reputation of the attorney.'" *Gonzales v. City of San Jose*, No. 13-CV-00695-BLF, 2016 WL 3011791, at *3 (N.D. Cal. May 26, 2016) (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Gonzales*, 2016 WL 3011791 (quoting *Dang*, 422 F.3d at 814). The relevant community here is the Northern District of California, "the forum in which the district court sits." *Camacho*, 523 F.3d at 979.

Zuegel's counsel requests the following rates: $675/hour for Ms. Grayson, who has been practicing law since her graduation from Berkeley Law School in 1982 and working as a solo practitioner since 1987, *see* Decl. of Violet Grayson ("Grayson Fees Decl.") ¶ 2, ECF 186; and $173/hour for paralegals, *see* Fees Mot. 16, which was later modified to request $185/hour for Gregory Zarrillo, a paralegal; $235 for Robert Park, a paralegal who assisted Ms. Grayson at trial; and $150 for Bea Verrillo, a paralegal, *see* Decl. of Violet Grayson ("Grayson Fees Reply Decl."), ¶¶ 24-30, ECF 206. Defendants argue that Ms. Grayson's rate should be reduced to $525, primarily because she is a solo practitioner. Defendants rely on rates approved for lawyers who handle tens of thousands of cookie-cutter ADA cases as a benchmark for Ms. Grayson's rate. Opp'n to Fees Mot. 13, ECF 193; *see also* Decl. of James Schratz ("Schratz Decl.") ¶¶ 84-88, 91, ECF 193-1. Defendants did not object to Ms. Grayson's original request for $173/hour for all three paralegals. Schratz Decl. ¶ 52.

Regarding Mr. Schratz, Defendants' purported fee expert, the Court notes that "[m]ultiple courts, including the Ninth Circuit, have already held that his methodology in calculating fees lacks legal and factual support." *Curtin v. County of Orange*, No. SACV16-00591-SVW-PLA, 2018 WL 10320668, at *11 (C.D. Cal. Jan. 31, 2018) (citing *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992-993 (N.D. Cal. 2005)). In this District, Judge Koh has rejected his contention that solo practitioners should be paid less based on that fact alone:

> Schratz cites no Ninth Circuit authority holding that attorneys who practice at small law firms should be forced to recover fees at a lower hourly rate than those at large law firms, regardless of the prevailing market rates for a particular type of work. Like other district courts that have rejected this contention, the Court is not persuaded that prevailing clients of civil rights attorneys practicing at smaller firms should be penalized in the manner Schratz suggests.

*Kalani v. Starbucks Corp.*, No. 13-CV-00734-LHK, 2016 WL 379623, at *6 (N.D. Cal. Feb. 1, 2016) (citing *Cruz v. Starbucks Corp.*, No. 10-CV-01868-JCS, 2013 WL 2447862, at *6 (N.D. Cal. June 5, 2013)).

Ms. Grayson cites Judge Chen's decision to award two highly experienced solo

practitioners $675 an hour in a civil rights case to support her requested rate of $675. *See Asante v. California Dep't of Health Care Servs.*, 237 F. Supp. 3d 933, 942 (N.D. Cal. 2017), *rev'd on other grounds*, 886 F.3d 795 (9th Cir. 2018). Fees Mot. 16. Ms. Grayson also cites *Padgett v. Loventhal*, No. 5:04-CV-03946-EJD, 2015 WL 1520827 at *3 (N.D. Cal. Mar. 31, 2015) (listing "reasonable hourly rate for civil rights attorneys" in the Bay Area as "up to $700 for partners, up to $350 for associates, [and] up to $200 for paralegals and law clerks"); *Dixon v. City of Oakland*, No. C-12–05207 DMR, 2014 WL 6951260, at *7, *9 (N.D. Cal. Dec. 8, 2014) (approving hourly rates in an individual civil rights case of $725 and $695 for partners); *A.D. v. State of California Highway Patrol*, No. C 07–5483 SI, 2013 WL 6199577, at *5–6 (N.D. Cal. Nov. 27, 2013) (approving hourly rates in a wrongful death case of $725 for attorneys with 34 to 40 years of experience) and *Davis v. Prison Health Servs.*, No. C 09–2629 SI, 2012 WL 4462520, at *9 (N.D. Cal. Sept. 25, 2012) (approving hourly rates of $675–750 for attorneys with close to 30 years of civil rights and employment litigation experience). Accordingly, the Court finds Ms. Grayson's requested rate of $675 appropriate.

As for the paralegals, the Court accepts Ms. Grayson's reduction of Ms. Verrillo's rate to $150/hour, based on her lesser experience and education, and will use Ms. Grayson's original rates of $173/hour for Mr. Zarrillo and Mr. Park. In her reply brief, Ms. Grayson's increased her requested rate for Mr. Park to $235/hour since he has a medical degree that allegedly helped him read the deposition testimony of a psychiatrist who was too ill to attend trial. Grayson Fees Reply Decl. ¶ 30. For that task, it seems that a fine arts degree in drama might have been more persuasive. The Court finds this upward adjustment unreasonable, and Ms. Grayson has cited no cases establishing that a medical degree impacts the rate at which paralegal work is billed. Ms. Grayson's upward adjustment for Mr. Zarrillo seems to be a result of a change of heart in the proper methodology used to calculate paralegal rates. *Id.* The Court finds Ms. Grayson's original evaluation of Mr. Zarrillo's services more appropriate. Additionally, it is unfair to Defendants to

confront higher billing rates in Ms. Grayson's reply brief.

To summarize, the Court approves the following rates: $675/hour for Ms. Grayson; $173/hour for Mr. Park; $173/hour for Mr. Zarrillo; and $150/hour for Ms. Verrillo.

## C.    Reasonable Number of Hours Expended

The Court next considers the hours expended by Zuegel's counsel and her staff. "The Court cannot 'uncritically' accept the plaintiff's representations of hours expended; rather, the Court must assess their reasonableness." *Gonzales*, 2016 WL 3011791, at *5 (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)). In making this determination, the Court can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary. *Hensley*, 461 U.S. at 433-34.

At the Court's request, Ms. Grayson submitted the following table, detailing the hours each individual devoted to twelve discrete tasks:

| Task | Grayson | Zarrillo | Park | Verrillo |
|---|---|---|---|---|
| Complaint and Pre-Complaint Investigation | 78.9 | | | |
| Discovery | 297.6 | 32.4 | | |
| Motion Practice – Rule 12(b)(6) | 86.4 | | | |
| Motion Practice – Summary Judgment | 142.3 | 6.7 | | |
| Motion Practice – Leave to Amend | 30.9 | | | |
| Motion Practice – Rule 50(b) Motion | 38.5 | | | |
| Settlement Efforts | 36.4 | | | |
| General (non-discovery) Communication with Client and Adverse Counsel; Case Management | 85.4 | | | |
| Expert Selection, Reports, and Discovery | 118.9 | | | |
| Pretrial (including joint pretrial statement with appendix, jury materials, and pretrial conference | 87.9 | | | |
| Trial Preparations and Trial | 180.5 | | 146.7 | 2 |
| Fee Application | 227 | | | 50.2 |
| **Total Hours** | 1410.7 | 39.1 | 146.7 | 52.2 |

Updated Billing Table, ECF 220.

Defendants broadly argue that the Court should omit time spent on unsuccessful claims and reduce Ms. Grayson's fees by 90%. Opp'n to Fees Mot. 13-20; Schratz Decl. ¶ 112. Mr. Schratz, Defendants' purported expert, admits "it is difficult to come up with an exact number or percentage," when attacking Ms. Grayson's Fees Motion. Schratz Decl. ¶ 112. The Court finds this broad argument is best considered under the *Hensley* two-step approach as part of a reduction for limited success, which is addressed below. In this section, the Court will review the reasonableness of Ms. Grayson's hours and address Defendants' specific objections to the hours expended, which all relate to Ms. Grayson's paralegals.

### 1. Attorney Time

#### a. Pre-Trial and Trial Attorney Hours

Ms. Grayson requests an award of $952,222.50 for 1410.7 hours of attorney time. *See* Updated Billing Table, ECF 220. In calculating the proper lodestar amount, the Court first reviews the attorney time devoted to each major task in the case to determine whether the time was reasonable. In this initial review, the Court does not consider whether the work performed was devoted to successful claims. Notably, Defendants do not challenge Ms. Grayson's expenditure of time per task as excessive or duplicative. Their only suggestion of improper attorney hours relates to what they categorize as clerical work.

Defendants identify 11.6 hours they classify as clerical. Schratz Decl. ¶ 116. But Defendants do not request a deduction of those hours. Schratz Decl. ¶ 123. Ms. Grayson adequately justifies those attorney hours. Grayson Reply Decl. ¶¶ 20-21. No deduction will be made.

The Court has carefully reviewed Ms. Grayson's 41 pages of detailed time entries, *see* Letter, Ex. 1, VEG Time Records, ECF 220-1, and compared them to her chart summarizing hours expended per major task, *see* Updated Billing Table. The time is well documented, and the hours devoted to the major tasks appear reasonable, with one glaring exception for the 227 hours devoted to this fee application, which is discussed below.

Defendants' objection to the fee award is focused on their contention that the fee award

United States District Court
Northern District of California

1    must be limited to the successful claims in the case, and time devoted to claims that the Court

2    dismissed or was otherwise irrelevant to the case should not be compensated. Opp'n to Fees Mot.

3    13. They further argue that the fee award should be reduced in recognition of the "negligible

4    verdict" when compared to the "exorbitant fees and expenses" sought. Opp'n 17. This argument is

5    also discussed in detail below.

6         Thus, the Court initially approves the requested lodestar amount of $675 per hour for

7    1183.7 hours of pre-trial and trial work.

### b. Fee Application

9         In Ms. Grayson's initial Billing Table, she documented 96.5 hours spent on her Fees

10   Motion. Grayson Fee Decl., Ex. 6, Initial Hours Chart, ECF 186-6. In her Updated Billing Table,

11   that number has grown to a whopping 227 hours—close to the same amount of time she spent on

12   all discovery matters (297.6) and significantly more time than she spent on her summary judgment

13   motion (142.3) or trial (180.5). Further, Ms. Grayson's 227 hours is in addition to 45 hours Ms.

14   Verrillo devoted to the motion. The Court finds this amount of time unreasonable.

15        A review of the opening brief supporting the motion for fees and expenses shows a

16   standard set of arguments and supporting documentation covering an array of issues and justifying

17   the fees and costs requests given the modest verdict of $3,000. The supporting documentation is

18   also standard. The time charts show 96.5 hours devoted to the opening briefs and documentation

19   supporting the fees motion. *See* Initial Hours Chart. A separate motion for review of taxation of

20   costs was filed on February 12, 2021. Taxation Mot., ECF 212. It's not clear why this motion was

21   filed given that Ms. Grayson sought full reimbursement for expenses in the initial fees motion

22   based on the more generous body of law supporting full reimbursement for reasonable expenses in

23   civil rights cases.

24        It's hard to parse the time records related to the time expended on the reply briefs and the

25   separate motion to review taxation of costs, but the briefs and documentation show that Ms.

26   Grayson unnecessarily submitted information and argument on nation-wide attorneys fee rate

27   reports, *see* Grayson Fees Reply Decl., Ex. 3, Real Rate Report, ECF 206-3, rather than simply

28   providing the Court with fee awards in similar cases from this district. Ms. Grayson also

16

unnecessarily had to supplement her justification for her paralegal time. Further, it appears that excessive time was spent researching and organizing the motions and replies. Additional support for the Clerk's cost award was provided, but that information should have been submitted with the initial request for costs. All in all, given the scope of issues and being particularly mindful of the complexity of the fee issue regarding the division between successful and unsuccessful claims, it is the Court's determination that a reasonable number of hours for an attorney as experienced and accomplished as Ms. Grayson describes herself would be 75 hours. The Court will deduct 152 hours from this portion of the request.

Thus, the Court approves 75 hours for the fees and costs motions at $675 per hour.

The total amount initially allowed for Ms. Grayson is 1,258.7 hours at $675 per hour.

### 2. Paralegal time

Defendants argue that none of Ms. Grayson's three paralegals appears to be qualified as a paralegal and, as such, cannot be billed as paralegals. Schratz Decl. ¶¶ 53-54. The Court finds that Ms. Grayson has provided the necessary information in her Reply Declaration, showing the education, training, and experience of each of her paralegals. *See* Grayson Fees Reply Decl. ¶¶ 25-30. Although the Court will not entertain upward adjustments of rates for Mr. Park or Mr. Zarrillo, which were submitted in the Reply Declaration, *see* Grayson Fees Reply Decl. ¶ 30, the reduced rate for Ms. Verrillo is reasonable given her lesser education and training. Fees for paralegals are approved as follows:

### a. Mr. Park

Ms. Grayson requests fees for 146.7 hours of Mr. Park's time. *See* Updated Billing Table. Mr. Schratz argues that 20.90 hours of Mr. Park's time was spent traveling and waiting for the verdict, and this time should not be compensated. Schratz Decl. ¶¶ 124-130. Ms. Grayson opposes this reduction because, as explained in her Fees Declaration, her efforts to find a local second chair for trial were unsuccessful due to the hesitancies of lawyers and paralegals to participate in a jury trial during November 2020, when the COVID-19 threat was high. Grayson Fees Decl. ¶ 8, Grayson Fees Reply Decl. ¶ 35. Ms. Grayson explained that she has previously worked with Mr. Park on past trials. Grayson Fees Reply Decl. ¶ 35. She also argues that his presence was

United States District Court
Northern District of California

necessary while waiting for the verdict, as Ms. Grayson was prohibited from leaving the courthouse and unsure what emergencies or needs may arise. Grayson Fees Reply Decl. ¶ 36.

The Court is satisfied that Mr. Park's travel time was reasonably necessary due to the difficulty of hiring staff to assist with trial during the COVID restrictive period. Time waiting for the jury to return its verdict was also reasonable to assist Ms. Grayson. No deductions will be made to the fees request for these hours.

Mr. Schratz next argues that 48.50 hours of Mr. Park's work should be billed at a clerical work rate. Schratz. Decl. ¶ 116. Ms. Grayson disagrees with the classification of this work as clerical, but she suggests a rate of $50/hour for any work classified by the Court as clerical. Grayson Fees Reply Decl. ¶¶ 33, 34. Ms. Grayson argues that tasks such as conversations with counsel regarding the structuring of trial notebooks, logistical planning for trial in California during COVID, the courtroom walk-through and testing of courtroom equipment, work on the electronic trial exhibits, and rehearsal of testimony as Dr. Wasserman are not clerical tasks. *Id.* ¶ 34.

The Court agrees with Defendants that some of Mr. Park's tasks were purely clerical, including printing tabs and documents and packing. The Court will reduce Mr. Park's hours by 16.7 hours for those tasks as reflected in his time sheets. Grayson Decl., Ex. 4, Park Time Records, ECF 186-4.

Thus, the Court approves 130 hours at $173 per hour. No compensation for clerical work is awarded. The Court considers those tasks to be subsumed in normal overhead expenses. *See Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redlands Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006), *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016), *Yates v. Vishal Corp.*, No. 11-CV-00643-JCS, 2014 WL 572528, at *5 (N.D. Cal. Feb. 4, 2014) ("However, purely secretarial or clerical tasks are generally not recoverable in a motion for attorney's fees.")

### b. Mr. Zarrillo

Ms. Grayson requests fees for 39.1 hours of Mr. Zarrillo's time. *See* Updated Billing Table. Mr. Schratz argues that 28.87 hours of Mr. Zarrillo's work should be billed at a clerical

1  work rate. Schratz. Decl. ¶ 116. Ms. Grayson argues that most of Mr. Zarrillo's time was devoted

2  to deposition preparation, which is a paralegal rather than clerical task. Grayson Reply Decl. ¶ 32.

3      The Court agrees that 12 hours of Mr. Zarrillo's time was devoted to clerical tasks,

4  including booking court reporters, duplicating and collating documents, color scanning

5  documents, and preparing chambers' copies. Those hours will not be compensated.

6      Thus, the Court approves 27.1 hours at $173 per hour. No award for clerical tasks is

7  allowed.

8          **c.  Ms. Verrillo**

9      Ms. Grayson requests fees for 52.2 hours of Ms. Verrillo's time. *See* Updated Billing

10 Table. Mr. Schratz argues that 25 hours of Ms. Verrillo's work should be billed at a clerical work

11 rate. Schratz. Decl. ¶ 116. The Court notes that when Mr. Schratz was evaluating Ms. Verrillo's

12 work, Ms. Grayson was only asking for 30 hours' compensation for Ms. Verrillo—in her

13 subsequent updated billing table, Ms. Grayson added an additional 20.2 hours to Ms. Verrillo's

14 total, all billed for work on the Fee Motion. *See* Updated Billing Table. Ms. Grayson argues that

15 work on the Fees Motion is not clerical in nature. Grayson Reply Decl. ¶ 32.

16     The Court finds that a significant portion of Ms. Verrillo's time was devoted to clerical

17 tasks related to the fees motion. The Court has allowed time that appears to have been spent

18 evaluating the fees and costs documents and excluded only those hours that appear to be clearly

19 clerical. A reduction of 13.9 hours is made for retrieving and delivering the Smith declaration,

20 updating time sheets, scanning deposition transcripts, and compiling exhibits.

21     Thus, the Court approves 38.3 hours at $150 per hour. No award for clerical tasks is

22 allowed.

23 //

24 //

25 //

26 //

27 //

28 //

### D. Lodestar Calculation

Based on the foregoing, the total lodestar calculation is summarized in the following table:

|  | Hourly Rate | Hours Requested | Hours Excluded | Hours Awarded | Total Tentatively Awarded |
|---|---|---|---|---|---|
| **Ms. Grayson** | $675 | 1410.7 | 152 | 1,258.7 | $849,622.50 |
| **Mr. Zarrillo** | $173 | 39.1 | 12 | 27.1 | $4,688.30 |
| **Mr. Park** | $173 | 146.7 | 16.7 | 130 | $22,490 |
| **Ms. Verrillo** | $150 | 52.2 | 13.9 | 38.3 | $5,745 |
| **Total** |  |  |  |  | $882,545.80 |

### E. Appropriate Reduction for Limited Success

Next, the Court considers Defendants' primary argument that fees must be reduced to account for Zuegel's limited success on the pleaded claims.

Defendants argue that Ms. Grayson's fees should be reduced by 90% due to the limited success at trial. Opp'n to Fees Mot. 13-20. Ms. Grayson argues that no reduction is appropriate and instead requests a 0.1 multiplier be added to the lodestar amount for trying a difficult case under difficult conditions. Fees Mot. 18-19.

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. Evaluating an attorney's fee award under *Hensley* is a two-step process. *See Dang*, 422 F.3d at 812-13. The first step under *Hensley* requires the Court to consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Webb*, 330 F.3d at 1168 (quoting *Hensley*, 461 U.S. at 434). Claims are related if they "involve a common core of facts *or* are based on related legal theories." *Dang*, 422 F.3d at 813 (emphasis in original) (citing *Webb*, 330 F.3d at 1168). "At bottom, 'the focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.''" *Dang*, 422 F.3d at 813 (citing *Webb*, 330 F.3d at 1169). "*Hensley* recognized that work on different aspects of a case often overlaps, and that '[m]uch of counsel's time will be devoted generally to the litigation as a whole.'" *Webb*, 330 F.3d at 1169 (quoting *Hensley*, 461 U.S. at 435). "If it is impossible to isolate the truly unrelated claims from those

related claims, the district court should instead reflect that limited success in *Hensley's* second step: the significance of the overall relief in relation to the hours reasonably expended on the litigation." *Webb*, 330 F.3d at 1169 (citing *Sorenson*, 239 F.3d at 1147).

Defendants argue for the 90% reduction due to the "very modest verdict of $3,000," which was based on a legal theory that was not expressly contemplated by the pleadings, not the focus of discovery, and not specifically raised until the later stages of litigation; Defendants' prevailing on whether the officers had consent to enter the house; Defendants prevailing on the *Monell* claim against the City; Defendants prevailing on other claims at the motion to dismiss and summary judgment stages; and the dismissal of Defendant Marco Garcia prior to trial. Opp'n to Fees Mot. 20. Defendants argue that the Court can sort out the successful claim from the unsuccessful claims though do not offer a specific roadmap to do so. *Id.* 14-16. Defendants cite Schratz's speculation that 3% of Ms. Grayson's time was spent on the withdraw-of-consent issue, *id.* 13, and a declaration from Defense counsel that attempts to isolate the time spent on withdraw-of-consent during the deposition of Defendant Ward, *id.* 15-16; *see also* Decl. of Jon Heaberlin ("Heaberlin Fees Decl.") ¶¶ 7-8, ECF 193-6.

Ms. Grayson argues that the successful claim was related to the other claims in this lawsuit and she should be fully compensated for her time expended on the case as a whole. Fees Mot. Reply 5-10, ECF 208.

### 1. *Hensley* Step One

The Court has reviewed all of the claims asserted throughout the case to determine whether the unsuccessful claims were entirely distinct and separate from the successful claims. Here, the course of conduct that forms the basis of the successful claims was the officers' arrival at the Zuegel home and their arrest of Zuegel after entry into the home. More broadly, the lawsuit included claims related to MVPD's investigation of the reported sexual assault; an alleged punitive practice of weekend arrests for sexual assault cases; and conduct of the Defendants post-arrest regarding right to counsel, Miranda rights, search and seizure of cell phone, and jail protocol regarding strip search upon entry into the jail.

"[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a

common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown*, 565 F.3d at 1103 (quoting *Hensley*, 461 U.S. at 435). The Court disagrees with Defendants that the withdrawal-of-consent issue is unrelated to *any* other issue raised in this case and finds its suggestion of a 90% fee reduction not sufficiently grounded in evidence. While Defendants prevailed on the claim regarding their initial entry into the home, that issue was completely intertwined and related to the successful claim regarding withdrawal of consent. The Court does find, though, that some claims initially pursued by Zuegel were truly unrelated to the successful Fourth Amendment claim.

In its first ruling on one of Defendants' motions to dismiss, the Court ruled that the following claims were barred under *Heck v. Humphrey*: unlawful arrest without probable cause; unlawful coercion to consent to a warrantless search of his cell phone; violation of the right to remain silent; violation of the right to counsel; and a violation of due process rights via interrogating of Zuegel after he requested an attorney Order 11-13, ECF 40. After April 19, 2018, Zuegel was on notice that he would not be able to pursue claims that "would necessarily call into question his criminal conviction for disorderly conduct." *Id.* 7. Despite these claims being dismissed so early in the case, it appears Zuegel refused to give up on probing these unrelated claims. On October 26, 2018, this Court dismissed without leave to amend Zuegel's second attempt at a right to counsel claim, this time fashioned as a due process issue. Order 9-10, ECF 56. On November 20, 2018, the Court dismissed Zuegel's Bane Act claim for injunctive relief under California law for lack of subject matter jurisdiction. *See* Order, ECF 59. At summary judgment, the Court dismissed Zuegel's claims related to an inconvenient Sunday night arrest and the right to marital and familial association. *See* MSJ Order 12-16. The Court also dismissed Defendant Garcia. *See* MSJ Order.

The Court has reviewed Ms. Grayson's 41 pages of detailed billing records and identified 85.1 hours that were spent on issues that were truly unrelated to the claim on which Zuegel ultimately succeeded. Those disallowed hours relate to matters including motions to proceed under pseudonym, adding Zuegel's son as a party, reviewing other sexual assault arrests by MVPD, discovery regarding interview tactics used for reporting parties in sexual assault cases, discovery

22

regarding post-arrest conduct of Defendants, discovery related to inconvenient Sunday night arrest, hours devoted to opposing two motions to dismiss and summary judgment on unsuccessful claims barred by *Heck v. Humphrey* and right to counsel, inconvenient Sunday night arrest, and right to marital and familial association caused by the overnight jail time. It is this Court's judgment that those claims were distinctly different both legally and factually from the successful claim regarding withdrawal of consent in the home. Accordingly, the Court subtracts $57,442.50 from Ms. Grayson's fees award.

Defense counsel has done a thorough analysis of the deposition of Defendant Ward, attempting to isolate time spent on the withdrawal of consent claim from other issues. *See* Heaberlin Fees Decl. ¶ 7. The Court has reviewed that transcript and agrees that of the 305 pages of deposition transcript, 205 pages (67%) were on topics unrelated to the claim on which Zuegel ultimately succeeded. Ms. Grayson's records reflect 6.5 hours billed for the first part of the Defendant Ward deposition on February 6, 2019. *See* VEG Time Records 8. Her entry for July 24, 2019, reflects the time expended (5.1 hours) to complete the depositions of Defendants Garcia, Moore, and Ward. *Id.* 10. Defendants do not provide the Court with a time estimate for the second Ward deposition, so the Court finds it reasonable to assume that one-third of that time was spent on the Ward deposition (1.7 hours). Accordingly, the Court subtracts the fees for 67% of the 6.8 hours Ms. Grayson spent on the Ward deposition and an additional 8 hours from the associated prep time and post-deposition review, which amounts to a 12.5-hour reduction at $8,437.50 reduction.

While Defense counsel has done a thorough job on one out of 21 depositions taken in this matter, Defendants' purported fee expert has not provided the Court with similarly detailed analysis related to the other 20 depositions. Mr. Schratz notes "sporadic references" to the withdraw of consent issue in his review of the depositions, *see* Schratz Decl. ¶ 98, but ultimately concludes that just *two* total pages of deposition testimony related to the withdrawal of consent issue, *see id.* The Court does not find this analysis helpful and finds that Defendants have provided the Court with no factual basis for evaluating the merits of the other 20 depositions in this matter under *Hensley* Step One. Accordingly, the Court cannot separate out the unrelated claims from the

successful claim with regards to the other 20 depositions under *Hensley* Step One.

In summary, the Court deducts $65,880 from the lodestar amount under *Hensley* Step One. No deduction is made for any of the hours devoted to the claims for the illegal entry into the home, failure to train, and the extraordinary number of hours devoted to deposing numerous MVPD officers and ranking members of the police department regarding a wide range of policies and practices of the MVPD because those claims appear to be intertwined with the successful claim. The Court acknowledges that other aspects of the case may be separable, but it is impossible to further isolate the unrelated claims, and thus the Court turns to the second step.

### 2. *Hensley* Step Two

Under *Hensley's* second step, fees must be reduced if "the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown*, 565 F.3d 1097, 1103 (9th Cir. 2009). To evaluate the "public benefit," courts should consider "whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations" and also consider "the public benefit of deterring unconstitutional conduct by law enforcement officials in determining the fee." *McCown*, 565 F.3d at 1103 (internal citations omitted).

Defendants characterize the Constitutional right vindicated by Zuegel's victory as a "technical matter." Opp'n to Fees Mot. 18. Ms. Grayson disagrees that the victory was merely a "modest success," as there is a public benefit to any person who initially decides to cooperate with law enforcement by allowing them into a home but then changes their mind as the situation develops. Fees Mot. 14-15, Fees Mot. Reply 10-11. At the hearing, the Court explained that not every victory in a civil rights case, no matter how small, can be entitled to full fees, otherwise there would be nothing to analyze under *Hensley's* second step. The Court notes that Zuegel was not successful on his *Monell* claim, which means the jury did not view the City and MVPD as deliberately indifferent to the need to train its officers. In the Court's view, this reduces the public benefit to this lawsuit since the jury deemed the officer Defendants solely responsible for their own misconduct. The Court does acknowledge the value of the vindication of rights guaranteed by the United States Constitution. *See Robinson v. Delgado*, No. 1:02-CV-01538-NJV, 2011 WL

672628, at *7 (N.D. Cal. Feb. 17, 2011). The Court also acknowledges "the public benefit of deterring unconstitutional conduct by law enforcement officials." *McCown*, 565 F.3d at 1103 (internal citations omitted).

In this case, the jury awarded $3,000 on a single claim. As the Supreme Court teaches in *Hensley*, this Court's job is to consider whether "the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. The lodestar amount as calculated by the Court stands at $882,545.80. A modest further reduction under *Hensley* Step One has shaved an additional $65,880 for a remaining total of $816,665.80. This amount represents 1161.1 attorney hours and 195.4 paralegal hours.

Looking back at the case, Zuegel sued Defendants Moore, Ward, and Garcia along with the City of Mountain View. *See* Compl. Defendant Garcia was dismissed at summary judgment, and the jury found no liability against the City. In fact, after all those depositions and motions and claims, all that was successful was a Fourth Amendment claim for withdrawal of consent, and the jury found that the initial entry into the home was constitutionally valid, the City was not liable for failure to train, and the officers were not liable for punitive damages. It was, in fact, a modest victory on the merits and even more modest in the amount of damages the jury found to be due to Zuegel. Although Ms. Grayson did not state a precise request for damages in the pleadings, and left the total amount to the jury to decide, she did present evidence of medical bills for past care and emotional distress damages.

This Court does not consider strict proportionality between the amount of the award and the fees requested, but this Court does not ignore this differential and also may consider the excellence of the overall result, not only the amount of damages won. *McCown*, 565 F.3d at 1104. With these parameters in mind, the Court also notes that the Ninth Circuit affirmed a 25% reduction in *Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003), where the jury returned a verdict against the City but not the officer and awarded $80,000 in damages. The plaintiff in that case requested $188,115,66. The Ninth Circuit affirmed the district court's reduction of fees by 25% under *Hensley* Step Two. *Webb*, 330 F.3d at 1167 (reversing the case as to the application of *Hensley* step one).

It is this Court's conclusion that Zuegel did not obtain an excellent result when compared to the myriad claims he initially filed and the vast number of hours devoted to discovery unrelated to his ultimate victory. In considering the extent this suit benefitted the public, this Court concludes that Zuegel has not affected a change in policy or a discernable deterrent to widespread civil rights violations. *City of Riverside v. Rivera*, 477 U.S.561, 574-76 (1986); *McCown*, 565 F.3d at 1105. The damages award was virtually insignificant, and there was no punitive damages award. The Court acknowledges that there is some benefit to a plaintiff in obtaining legal vindication for violation of his rights, and thus the amount of the verdict is only a part of the equation, but it seems abundantly clear that no reasonable attorney or client would expend almost $1 million to win $3,000.

On this basis, considering all of the factors under *Hensley* Step Two, it is this Court's conclusion that the adjusted lodestar after the *Hensley* Step One deduction ($816,665.80) should be reduced by 50% for a total fee award of $408,332.90. Although this fee award is significantly disproportionate to the amount of damages, the Court has considered the real world expense of litigating civil rights cases, the general importance of holding public officials accountable to citizens, the non-monetary value of the award, and Congress's intention in providing fee awards to attract excellent lawyers to prosecute civil rights cases. The reduction of 50% is the result of the balancing of these considerations along with the *Hensley* factors applicable to the significant number of unsuccessful claims in this case.

### F. Request for Multiplier

Ms. Grayson requests a multiplier of 0.1, which the Court interprets as a request for a 10% increase or 1.1 multiplier. *See* Fees Mot. 18. Although the Court has significantly reduced the fee award under the *Hensley* factors, consideration of a multiplier entails different factors. *See Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1976). First, the request is very modest. Second, even though Zuegel paid a portion of the fees along the way, Ms. Grayson still shouldered the financial risk of being unpaid for a significant portion of her reasonable fees. Additionally, Ms. Grayson had to forego other cases in order to work on this case, and she has delayed full payment of her fees for several years. Finally, the case had some stigmatizing

factors, especially considering that the arrest arose out of a report of a sexual assault on a child. For these reasons the Court will award the requested multiplier of 1.1, increasing her fees award to $449,166.19.

### G. Expenses

The Court will next review Ms. Grayson's expenses, which she requests to be paid in full. Fees Mot. 19-20. Prior to filing her fees motion, Ms. Grayson filed a Bill of Costs on December 14, 2020. *See* Bill of Costs, ECF 187. Defendants filed a timely objection. *See* Objection, ECF 190. The Clerk evaluated and taxed Ms. Grayson's Bill of Costs under Civil Local Rule 54, which applies in all cases for the prevailing party and does not take into consideration fee-shifting statutes in general or civil rights cases in particular. *See* ECF 201. Ms. Grayson has filed a motion for review of taxation of costs, arguing that her expenses should be evaluated under 42 U.S.C. 1988, not Civil Local Rule 54. *See* Taxation Mot. Her arguments in her taxation motion mirror her argument in her fees motion that her expenses should be paid in full. *See id.* Defendants acknowledge that the Court may evaluate Ms. Grayson's claimed costs under Section 1988. *See* Opp'n to Taxation Mot., ECF 215. Although the Clerk's costs determination may have been correct under the local rule, she left it to the Court to award costs under Section 1988. Accordingly, the Court will use Section 1988 to evaluate Ms. Grayson's expenses.

"It is well-established law that attorneys' fees awards can include reimbursement for litigation expenses which are normally billed to fee-paying clients." *Robinson*, 2011 WL 672628, at *7. The Court notes that it has broad discretion to grant attorneys' fees and costs. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991).

Ms. Grayson has submitted the following chart categorizing her expenses:

| Expense Code | Expense Amount |
| --- | --- |
| Filing Fee, Service of Process | $780 |
| Travel (Including Hotels, Parking, Uber) | $8,878.35 |
| TypeLaw Brief Covers and Tables | $2,754 |
| Shipping, Duplication, and Trial Notebooks | $2,407.55 |
| Court Reporter's Transcripts & Video Disks | $42,738.61 |

| Mediation Fee JAMS – Wayne Brazil | $2,450 |
|---|---|
| Fee for Wayne Brazil Presiding as Referee at Deposition of Dr. Laura Davies | $5,902.80 |
| Plaintiff's Payments to Plaintiff Experts | $2,850 |
| Plaintiff's Payments to Defense Experts | $7,105 |
| Real Rate Report | $500 |
| **Total** | **$76,366.31** |

Defendants renew their argument that Ms. Grayson's expenses should be reduced by 90% because only 10% of the claimed costs should be awarded as related to the successful claim based on withdrawal of consent. Opp'n to Taxation Mot. 5. Defendants provide no itemized documentation supporting such a draconian cut, and the Court finds no factual basis for slashing such a large percentage of the expenses. As noted above, the Court finds factual no basis on which to accurately separate time spent on truly unrelated claims. Instead, the Court will consider both Parties' specific arguments related to specific costs.

### 1. Service of Process

Defendants object to $380 of charges because there is not supporting documentation to show that this expense was reasonably required. Opp'n to Taxation Mot. 2-3. Ms. Grayson responds that "front desk personnel at both the Mountain View Police Department and Mountain View City Hall, repeatedly refused the summons and complaint, alternatively demanding witness fees and stating that they were not authorized to receive the documents," so the $380 expense was reasonably required and actually incurred. Decl. of Violet Grayson ("Grayson Taxation Decl.") ¶ 5, ECF 214.

It is not reasonable to attempt service multiple times on a public agency where a call to the City Attorney would resolve the problem. The Court will allow costs for two attempts and exclude the remainder. The allowed cost will be $120 ($60 per attempted service), meaning $260 is excluded.

### 2. Court Reporter's Transcripts

Defendants object to several charges in this category.

First, Defendants object to $3,561.65 of charges for the final pretrial conference and trial transcripts. Objection 3, Opp'n to Taxation Mot. 3. Defendants argue that there has been no appeal in this case, and "there was never an agreement by counsel that the fee-split for the trial transcript

included a provision that the transcript fees would be recoverable post-verdict as costs." Objection 3. Ms. Grayson responds that, pursuant to Section 1988, a prevailing party "may recover as part of the award of attorney's fees those out of pocket expenses that would normally be charged to a paying client," *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994), and Ms. Grayson maintains that this expense was actually charged to her client, Grayson Taxation Decl. ¶ 6. Taxation Mot. 2-3.

This dispute is over whether the cost of the pre-trial hearing and daily transcripts during trial is reasonable. Having observed how each attorney used those transcripts throughout the trial and in aid of closing argument and knowing the regularity of attorneys' use of them in all types of litigation, the Court finds this expense reasonable. Further, the cost of the final pre-trial conference transcript was reasonable because the Court orally makes dozens of trial process orders that are not otherwise captured in a written order. The full cost request is approved for this item.

Defendants next object to $26,214.62 of charges for deposition transcripts and videography fees of police department employees, including the officer Defendants. Objection 3-4. Defendants argue that the withdraw-of-consent issue that Ms. Grayson ultimately won was not the subject of any of these depositions and question whether the depositions were "necessarily obtained" for use in the case *Id.* 4 (citing *TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C-10-02590 CW (DMR), 2014 WL 1364792, at *4 (N.D. Cal. Apr. 4, 2014)). Ms. Grayson responds that *TransPerfect* is not a civil rights case awarding out-of-pocket expenses that are charged to a paying client under Section 1988, and these costs qualify. Taxation Mot. 3-5. More specifically, Ms. Grayson argues that the depositions of the officer Defendants were necessary for cross-examination at trial; the Rule 30(b)(6) depositions were a necessary aspect of the litigation process and were charged to her client, Grayson Taxation Decl. ¶ 9; and the depositions of the supervisor witnesses were relevant and exposed the fact that the MVPD incorrectly trained its officers on the law of consent, which the Court cited in denying Defendants' summary judgment motion. Taxation Mot. 5-6. As noted above, Defendants have not provided the Court with the necessary evidence to evaluate their challenge to the propriety of 20 out of 21 depositions taken in this case. Further, as a named Defendant in this case, the Court finds that Defendant Ward's deposition was

"necessarily obtained" for use in the case. Accordingly, the full cost is approved for this item.

Defendants also object to $7,933.70 of charges for defense psychiatrist expert Dr. Davies' two deposition sessions. Objection 4-5. Defendants again point to Ms. Grayson's modest success, with a $3,000 jury verdict, and the fact that the deposition was highly contentious. *Id.* However, Defendants cite no case law suggesting that contentious depositions are not compensable. Ms. Grayson argues that Dr. Davies testimony changed dramatically as a result of her deposition, during which she had to admit errors in her Rule 26 report. Taxation Mot. 8. For this reason, Ms. Grayson argues her deposition was necessary. *Id.* Although it appears that the Davies deposition got a bit out of control, equal fault lies with the witness and Ms. Grayson. The deposition was an important component of the trial as it related to the damages award, and Dr. Davies was a defense expert who Zuegel needed to depose, especially given the serious discrepancy in Dr. Davies' report that was only corrected by Zuegel's audio recording of the evaluation. The full cost is allowed.

Defendants object to $5,902.28 of charges for the special master fees associated with Dr. Davies's deposition on the grounds that, while these costs are ordinarily recoverable, the parties had previously agreed to split this cost. Objection 5. Ms. Grayson responds that the special master was appointed at Defendants' suggestion and there was never any agreement from her that she would waive her right to recover half of the cost for the special master if Zuegel prevailed at trial. Taxation Mot. 9-10.

This request presents a harder question. The Court is persuaded that the retention of a special master to referee the Davies deposition on the basis of a split fee arrangement was an acknowledgement by both parties that they bore equal responsibility for the need for the supervision. It would be unfair to rewrite that agreement and place the burden of the full amount on Defendants under this circumstance. The total amount is denied.

Finally, Defendants object to $1,034.20 of charges for the audio expert depositions. Objection 5. Defendants admit that Ms. Grayson was successful in limiting the trial testimony of the defense expert yet speculates that these depositions were not "necessarily obtained," given the jury verdict. *Id.* Ms. Grayson argues that it was Defendants who made this an expert-oriented case,

and she necessarily deposed their expert and retained her own expert rebuttal witness. Taxation Mot. 7.

The audio experts were retained to assist in the transcription of the body-cam audio that was unintelligible. The audio content of that video was essential to the primary issue tried to the jury, namely whether consent to enter the home was given by either of the Zuegels. The fact that those experts were not called at trial was in no way indicative of the lack of relevance to the primary issue in the case. In fact, the Court disallowed the defense audio expert to testify on the most significant opinion Defendants sought to offer, calling the opinion "fantastical." Order on Motions in Limine 7, ECF 147. Thus, it was reasonable for Plaintiff to retain a rebuttal expert. This cost is allowed in full.

**H.     Conclusion**

For the reasons stated above, the Court approves the following costs:

| Expense Code | Expense Amount Requested | Amount Excluded | Total Awarded |
|---|---|---|---|
| Filing Fee, Service of Process | $780 | $260 | $520 |
| Travel (Including Hotels, Parking, Uber) | $8,878.35 | $0 | $8,878.35 |
| TypeLaw Brief Covers and Tables | $2,754 | $0 | $2,754 |
| Shipping, Duplication, and Trial Notebooks | $2,407.55 | $0 | $2,407.55 |
| Court Reporter's Transcripts & Video Disks | $42,738.61 | $0 | $42,738.61 |
| Mediation Fee JAMS – Wayne Brazil | $2,450 | $0 | $2,450 |
| Fee for Wayne Brazil Presiding as Referee at Deposition of Dr. Laura Davies | $5,902.80 | $5,902.80 | $0 |
| Plaintiff's Payments to Plaintiff Experts | $2,850 | $0 | $2,850 |
| Plaintiff's Payments to Defense Experts | $7,105 | $0 | $7,105 |
| Real Rate Report | $500 | $0 | $500 |
| **Total** | **$76,366.31** | **$6,162.80** | **$70,203.51** |

United States District Court
Northern District of California

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Rule 50(b) motion for judgment as a matter of law is DENIED. Zuegel's motion for attorney's fees is GRANTED AS MODIFIED. Zuegel shall recover attorney's fees in the amount of $449,166.19. Zuegel's motion for award of expenses is GRANTED AS MODIFIED. Zuegel shall recover $70,203.51 in expenses.

Dated: July 6, 2021

_____
BETH LABSON FREEMAN
United States District Judge